# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

ROBERT JOSEPH ATKINS,      )
     )
        Plaintiff,      )
     )
v.      )      No.: 3:25-CV-174-KAC-JEM
     )
THOMAS SPANGLER, CHIEF COOPER,      )
C/O SMITH, C/O BARNES, C/O      )
RODRIGUEZ, and KCDF      )
ADMINISTRATION,      )
     )
        Defendants.      )

## <u>MEMORANDUM OPINION</u>

This action is before the Court on Plaintiff Robert Joseph Atkins's (1) Complaint filed under 42 U.S.C. § 1983 [Doc. 1] and various liberally-construed supplements [Docs. 5, 7, 12]; (2) Plaintiff's motions "to change venue" [Docs. 22, 24], and (3) Plaintiff's motion for recusal [Doc. 23]. Plaintiff is an inmate in the custody of the Tennessee Department of Correction ("TDOC")[1] who represents that he is currently housed at the Roger D. Wilson Detention Facility ("RDWDF") [*See* Doc. 24-1]. He is proceeding pro se and *in forma pauperis* [*See* Doc. 10]. For the reasons below, the Court **DENIES** Plaintiff's (1) motion for recusal [Doc. 23] and (2) motions to change venue [Docs. 22, 24]. And the Court **DISMISSES** the Complaint, as supplemented, [Docs. 1, 5, 7, 12] for failure to state a claim.

---

[1] The Court takes judicial notice that Plaintiff is in TDOC custody serving combined sentences of thirty-seven (37) years following Knox County convictions in 2022 and 2023. *See* Tenn. Dep't of Corr., *Felony Offender Information*, https://www.tn.gov/correction/agency-services/foil.html; *Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites." (citations omitted)).

## I.  MOTION FOR RECUSAL [DOC. 23]

Starting with the undersigned's ability to hear this case, Plaintiff seeks recusal of the undersigned because "she has not given me [Plaintiff] any response back to obtain evidence for my [his] claim denying me [Plaintiff] a fair case for trial" [Doc. 23 at 1].  This is not a proper basis for recusal.  Factually, as the Court previously explained, the Court must generally screen a complaint under the Prison Litigation Reform Act ("PLRA") before considering other motions in this action [*See* Docs. 25 at, 6 ¶ 6, 10 at 2].  That extends to Plaintiff's request to obtain evidence—before he can "obtain evidence" through discovery, the Court must complete its screen of the Complaint under the PLRA.  *See* 28 U.S.C. §§ 1915A, 1915(e).  Legally, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Plaintiff has identified no basis to reasonably conclude that the undersigned's impartiality might reasonably be question, and upon review, the undersigned has identified none. *See Burley v. Gagacki*, 834 F.3d 606, 615-16 (6th Cir. 2016).  Accordingly, the Court **DENIES** Plaintiff's motion for recusal [Doc. 23].

## II.  MOTIONS TO CHANGE VENUE [DOCS. 22, 24]

In a similar vein, Plaintiff seeks a change of venue because Plaintiff "has sent" the undersigned "numerous motions to obtain evidence for my [his] claim" [Doc. 22 at 1, *see also* Doc. 24 at 1].  This is not a proper basis to change venue.  Factually, as explained above, the Court must generally screen a complaint under the Prison Litigation Reform Act ("PLRA") before considering other motions in this action [*See* Docs. 25 at, 6 ¶ 6, 10 at 2].  That extends to Plaintiff's request to obtain evidence—before he can "obtain evidence" through discovery, the Court must screen the Complaint under the PLRA.  *See* 28 U.S.C. §§ 1915A, 1915(e).  Legally, 28 U.S.C. § 1391 generally controls the venue in which a case may be brought.  On the record, this Court is a proper venue for this action, which arises out of acts Defendants allegedly performed here in the

2

district. *See* 28 U.S.C. § 1391(b)(2).  Accordingly, the Court **DENIES** Plaintiff's motions to change venue [Docs. 22, 24].

### III.    SCREENING OF THE COMPLAINT, AS SUPPLEMENTED

Under the PLRA, the Court must screen the Complaint, as supplemented, and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune.  *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  The dismissal standard the Supreme Court articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure.  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  Thus, to survive initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim is "facial[ly] plausib[le]" if the Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Teamsters Local 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524 (6th Cir. 2023) (quoting *Iqbal*, 556 U.S.at 678).  Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim.  *Twombly*, 550 U.S. at 555, 570.  Further, formulaic and conclusory recitations of the elements of a claim that are not supported by specific facts fail to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 681.  However, the Supreme Court has instructed that courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

According to the allegations in the Complaint, as supplemented, on January 10, 2025, Plaintiff came to RDWDF "from prison with a letter to send to the United States District Court" and the United States Marshal Service ("USMS") [Doc. 1 at 5]. The letter was sealed and the envelope had "legal mail written on it" [*Id.*]. When Plaintiff first arrived at RDWDF, all of his legal work was taken and searched [*Id.*]. It was not returned until a day or two later [*Id.*]. When Plaintiff received his legal work, the letter to the District Court and USMS was not included [*Id.*]. Plaintiff told Sergeant Burrior about the missing letter, and on February 18, 2025, Sergeant Burrior told Plaintiff he checked and thought "they put it in your property" [*Id.*]. Plaintiff "wrote a grievance on it" [*Id.*].

On March 16, 2025, Plaintiff "was not given a shower or razor[,]" "even though [a] court order by Judge Steven Sword was signed and sent" on March 13, 2025 [*Id.* at 4; *see also* Doc. 5 at 2]. On March 17, 2025, Plaintiff "was sent to trial" after a shower but without having been provided a razor to shave [Doc. 1 at 3-4].

On March 18, 2025, while Plaintiff was in trial, an inmate told an officer that Plaintiff's legal work was laced with fentanyl [*Id.*]. Defendant Correctional Officer ("CO") Rodriguez confiscated Plaintiff's legal work and mail on the orders of Defendant Chief Cooper [*Id.*]. Chief Cooper also told Defendant CO Smith, the librarian, to copy Plaintiff's legal work, but Plaintiff did not consent and he was not "present to watch to make sure no extra copies [we]re being made and given to the DA[]s in criminal court to help them" [*Id.* at 4].

As Plaintiff was returning from trial on March 18, 2025, Defendant CO Barnes confiscated Plaintiff's trial folder, which contained his notes and questions [*Id.*]. That day, he was not "given a shower or razor" [*Id.*]. When Plaintiff went to trial on March 19, 2025, the judge "made the jail give [Plaintiff] a razor to shave," and he "was able to shave" [*Id.* at 4-5].

Approximately half of Plaintiff's legal work was returned on March 24, 2025 [*Id.*]. Plaintiff told Chief Cooper that half of his legal work was missing, but Chief Cooper assured Plaintiff that all his legal work had been returned [*Id.* at 6]. Plaintiff continued to attempt to convince Chief Cooper that some of his legal work was missing, but Chief Cooper stated "that's all they got from out of the librarian[']s office" [*Id.*].

Between March 26 and March 28, 2025, CO Smith (the librarian) brought Plaintiff "the rest of [his] legal work" [*Id.*]. Included was Plaintiff's letter to the USMS and District Court, which had been opened [*Id.*]. The envelope "had nothing but paper pictures of (nude women) in it" [*Id.*]. Plaintiff believes CO Smith, the Supervisors, and Administration took his legal work home or gave it to the district attorney to make copies, and he has not received those copies that have been made [*Id.* at 6-7].

Knox County has allegedly tampered with Plaintiff's legal mail before [*Id.* at 5]. For example, his "letter to the [T]itle 6 for discrimination was thrown away by C/O Childress" or lost by him [*Id.*]. Sergeant Rutherford came to talk to Plaintiff about his missing mail "and said he would [T]itle 6 for the letter C/O Childress either thr[e]w[] away or lost[,]" but Plaintiff has not received a response [*Id.*]. On May 19, 2025, Plaintiff's "legal mail" from the Internal Revenue Service ("IRS") was opened outside of his presence [Doc. 7].

Plaintiff, who is a maximum-security inmate "on disciplinary[,]" has been "denied a tablet to fight" his pending criminal charges even though the Inmate Handbook provides inmates in restrictive housing access to "legal library services" [*Id.* at 1, 3, 5]. Plaintiff was told that using the tablet is a privilege and to use the kiosk for legal research, but there are "numerous inmates" attempting to use the kiosk during the one-hour recreation period Plaintiff is allowed out of his

cell [*Id.* at 5-6]. Plaintiff believes this is "discriminat[ion] for being a max inmate on disciplinary" [*Id.* at 5].

Aggrieved, Plaintiff filed this civil action against Defendants Sheriff Thomas Spangler, Chief Cooper, CO Smith, CO Barnes, CO Rodriguez, and the "KCDF Administration." For relief, he asks the Court to either "start [his] civil trial procedures or see if the lawyer representing these officers want to make a deal" [Doc. 1 at 8].

To state a claim under 42 U.S.C. § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

### A. Claims Related to Legal Materials and Legal Mail

Plaintiff maintains that (1) his legal work was searched upon his arrival at RDWDF; (2) a letter to the USMS and District Court clearly marked "legal mail" was not initially returned to him with the remainder of his legal work; (3) his legal work was confiscated and copied on March 18, 2025, outside of his presence; (4) the KCDF Administration either took his legal work home or gave copies to the district attorney; (5) a "letter to the [T]itle 6 for discrimination was thrown away"; (6) legal mail from the IRS was opened outside of Plaintiff's presence on May 19, 2025; and (7) when Plaintiff's letter to the USMS and District Court was returned to him it had been opened outside of his presence [*See, generally*, Docs. 1, 7].

Prisoners do not lose all constitutional rights by virtue of their incarceration, but they face greater restrictions on those rights than they would outside prison. *Beard v. Banks*, 548 U.S. 521, 528 (2006) ("[T]he Constitution sometimes permits greater restriction of [constitutional] rights in a prison than it would allow elsewhere."). The Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Legitimate

6

penological interests include security, order, and rehabilitation. *Procunier*, 416 U.S. at 413. The Court generally considers four factors to assess the reasonableness of restrictions: (1) "whether the governmental objective underlying the regulations at issue is legitimate and neutral"; (2) whether "the regulations are rationally related to that objective"; (3) whether inmates have "alternative means of exercising the right"; and (4) "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison." *Thornburgh v. Abbott*, 490 U.S. 401, 414-418 (1989) (citations omitted). "The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

First, the allegations that Plaintiff's legal paperwork was searched and later confiscated and copied do not state a colorable claim under the Fourth Amendment. In *Hudson v. Palmer*, 468 U.S. 517 (1984), an inmate brought an action under Section 1983 claiming, in part, that the destruction of his personal property during a search of his cell violated his Fourth Amendment right to be free from unreasonable searches and seizures. The Supreme Court rejected that claim, stating that a prisoner does not possess "any subjective expectation of privacy . . . in his prison cell[.]" *Id.* at 526. The same logic extends to an argument that the seizure of Plaintiff's property violates the Fourth Amendment. *Id.* at 528 n.8. Because Plaintiff possesses no expectation of privacy in that property, the seizure of that property does not violate the Fourth Amendment. *See id.* at 526, 528.

Moreover, "prison officials have broad administrative and discretionary authority over the institutions they manage[.]" *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 480-84 (1995). Whether to search a prisoner or his property is generally a discretionary decision that is "the business of prison administrators rather than of the federal courts." *Id.* Searching a prisoner's belongings when the prisoner enters a

7

facility serves the valid penological objective of ensuring nothing is smuggled inside the facility. *See, e.g., Turner*, 482 U.S. at 89 (holding there must be "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it"). And Plaintiff's legal work was only later confiscated and copied after it was reported to prison officials that it contained illegal narcotics. Plaintiff was given copies of the legal materials. And the facility has a legitimate interest in quelling illegal drug possession. *See Bray v. Mazza*, No. 4:21-cv-119, 2022 WL 17836601, at *4 (W.D. Ky. Dec. 21, 2022) (finding valid connection between mail policy of copying legal mail and withholding originals served legitimate governmental interests of security and safety because "those items may have been sprayed, soaked, or otherwise coated with illegal substances"); *see also Hughes v. Gallion*, No. 2:15-cv-30, 2017 WL 11921719, at *7 (E.D. Tenn. June 1, 2017), *amended on denial of reconsideration*, No. 2:15-cv-30, 2018 WL 1525841 (E.D. Tenn. Mar. 28, 2018) ("It is constitutionally permissible to have a correctional officer photocopy incoming legal mail, make a photocopy of the original, provide the photocopy to the inmate, and place the original in the inmate's personal belongings.").

Second, the Complaint asserts that Plaintiff "believe[s] the librarian C/O Smith and Supervisors, Administration took [his] other legal work to the DA[]s or home to make copies" [Doc. 1 at 6-7]. But the Complaint does not present any factual basis for that belief. Without more, a party's "belief" that something is true is not enough to state a claim. *See Smith v. Gen. Motors*, LLC, 988 F.3d 873, 885 (6th Cir. 2021) (holding complaints made "on information and belief" cannot rest on conclusory allegations, but rather, "must set forth a factual basis for such belief"). These allegations are conclusory and do not state a claim. *See, e.g., Iqbal*, 556 U.S. at 681.

Third, Plaintiff states that a non-Defendant officer threw away or lost a letter Plaintiff wrote concerning "[T]itle 6 for discrimination" [Doc. 1 at 5]. But Plaintiff has not named the allegedly

8

responsible officer as a defendant in this action. And the Complaint identifies no basis to hold the remaining Defendants responsible for the actions of that non-Defendant officer. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002).

This leaves the allegations that Defendants have interfered with Plaintiff's legal mail. Prisoners have a First Amendment right to send and receive mail, subject to restrictions "reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873-74 (6th Cir. 2003) (citation omitted). When it comes to "legal mail," "we have heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Id.* at 874 (citations omitted). "Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights." *Id.* at 874. Also, "in response to prison officials' security concerns," even "constitutionally protected mail can be opened (although not read) and inspected for contraband." *Id.* "The only requirement is that such activity must take place in the presence of the recipient, if such a request has been made by the prisoner." *Id.*

Against this legal backdrop, the Complaint fails to state a claim. First, the Complaint asserts that that (1) a clearly marked, sealed letter to the USMS and District Court was returned to Plaintiff opened, and (2) "legal mail" from the IRS was opened outside of his presence [Docs. 1 at 6; 7 at 1]. But "mail from a public agency, such as the IRS, is not legal mail" in the constitutional sense. *Morton v. Clark Cnty. Det. Ctr.*, No. 2:23-cv-00818, 2024 WL 5381498, at *4 (D. Nev.

9

July 31, 2024).  And to "state a claim of constitutional proportions," the inmate must generally "allege routine opening or interference with his mail."  *See Barnes v. Daviess Cnty. Gov't*, No. 4:22-cv-P107, 2022 WL 17475783, at \*4 (W.D. Ky. Dec. 6, 2022) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)).  "[A] random and isolated incident [of mail interference] is insufficient to establish a constitutional violation." *See Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).  And it is apparent that the mail to the USMS and District Court was not constitutionally protected "legal mail" because the mail only contained photographs of nude women [*See* Doc. 1 at 6].  Therefore, the Complaint fails to state a claim.

### B.  Claims Related to Hygiene

Because of Plaintiff's significant criminal record, it is unclear whether Plaintiff was being held at the RDWDF as a pretrial detainee or a convicted prisoner at the time relevant to his hygiene claims.  But the result would be the same here under the Eighth or Fourteenth Amendment.  Section 1983 claims premised on the conditions of confinement "are highly fact-specific[.]"  *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017).  To state a claim based on the conditions at a detention facility, at the least, "the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Spencer v. Bouchard*, 449 F.3d at 728 (6th Cir. 2006) (internal citations and quotation marks omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Rather, only "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" rise to the level of a constitutional violation. *See Hudson v. McMillan*, 503 U.S. 1, 8-9 (1992) (citations and internal quotation marks omitted).

Here, the Complaint asserts that Plaintiff was twice denied a razor to shave and twice denied a shower in March 2025. But "deprivation of a shower and other personal hygiene items for a 'brief span of time' . . . is not actionable conduct" under the Constitution. *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000)). The Complaint does not allege a sufficiently serious deprivation to rise to the level of a Constitutional violation. So, the Complaint fails to state a claim. Further, while potentially actionable under state law, any failure to comply with a state-court order requiring Plaintiff to have the opportunity to shower and shave does not rise to the level of a federal or Constitutional violation. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

## C.     Claims Related to Tablet Use

Finally, the Court considers claims that Plaintiff has been discriminated against as a maximum-security inmate "on disciplinary[,]" because he was "denied a tablet" to perform legal work [*See* Doc. 7 at 1, 3, 5-6]. Liberally construed, these allegations implicate Plaintiff's right to access the courts and his Fourteenth Amendment right to equal protection.

The right to access the courts is a fundamental right protected by the Constitution. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). But the right is one of access, not an "abstract, freestanding right" to certain legal materials. *Id.* at 351. Thus, an inmate does not have a constitutional right to use a tablet to perform legal research. *See, e.g., Lehn v. Holmes*, 364 F.3d 862, 864 (7th Cir. 2004) ("[The Constitution] does not require any specific resources such as a law library or a laptop with a CD-ROM drive or a particular type of assistance."). Moreover, "a prisoner's constitutionally-guaranteed right of access to the courts has been protected when a state provides that prisoner with either the legal tools necessary to defend himself, e.g., a state-provided law library, or the assistance of legally-trained personnel." *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983). Here, the Complaint indicates that Plaintiff has access to a kiosk to perform legal research

11

for an hour a day.  And there are no allegations in the Complaint that any "shortcomings" in the kiosk or its availability "hindered his [Plaintiff's] efforts to pursue a legal claim."  *See Lewis*, 518 U.S. at 351.  So, any claim fails.

The Complaint also alleges that the denial of a tablet was done in discrimination "for being a max inmate on disciplinary" [Doc. 7 at 5].  These allegations, liberally construed, could implicate an equal protection right. *See* U.S. Const. amend. XIV, § 1.  But to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"  *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).

This, the Complaint, as supplemented, does not do.  First, the Complaint does not allege that general population prisoners were given access to a tablet.  And even if it did, the Complaint does not plead facts showing that maximum-security inmates on a disciplinary hold are similarly-situated to those in general population.  *See Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (affirming dismissal of  prisoner's equal protection claim because administrative segregation inmates are not similarly-situated to general population inmates for equal protection analysis).  Second, to the extent the claim is based on allegations that maximum-security inmates on a disciplinary hold do not have access to tablets, Plaintiff "cannot show an equal protection violation because . . . he is being treated exactly the same way as every other protective segregation prisoner."  *See Adkins v. Jones*, No. 206-CV-26, 2007 WL 397044, at *3 (W.D. Mich. Feb. 1, 2007).  And even taking as true that the Inmate Handbook provides inmates in restrictive housing access to "legal library services," [*see* Doc. 7 at 1, 3, 5], that does not equate to a tablet.  Even if it did, an alleged violation of an institutional regulation, without more, is insufficient to state a

12

Section 1983 claim. *See Neinast v. Bd. of Trs. of Columbus Metro. Libr.*, 346 F.3d 585, 597 (6th Cir. 2003). In the end, the Complaint, as supplemented, fails to state a claim and must be dismissed under the PLRA.

## IV. CONCLUSION

For the reasons set forth above, the Court (1) **DENIED** Plaintiff's motion for recusal [Doc. 23]; (2) **DENIED** Plaintiff's motions to change venue [Docs. 22, 24]; and (3) **DISMISSED** the Complaint, as supplemented, [Docs. 1, 5, 7, 12] under the PLRA for failure to state a claim. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24. So, should Plaintiff file a notice of appeal, he is **DENIED** leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24. **AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**SO ORDERED.**

**ENTER:**

        /s/ Katherine A. Crytzer
        KATHERINE A. CRYTZER
        United States District Judge